[Civ. No. 24257. Second Dist., Div. Two. Sept. 29, 1960.]

FLOSSIE PETERSON, Respondent, v. SAFEWAY STORES, INC. (a Corporation), Appellant.

Schell & Delamer and Patrick M. Hyde for Appellant.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Respondent.

NOURSE, J. pro tem.*—Defendant appeals from an adverse judgment based upon a verdict in an action for personal injuries. Viewed in the light most favorable to the respondent, the evidence established the following facts: Respondent was a business invitee on the premises of appellant. At the rear of appellant's store was an exit which was reached by an inclined way at the top of which was a door which was auto-

*Assigned by Chairman of Judicial Council.

matically operated when the customer stepped upon a rubber mat which extended three feet on each side of the swinging door. Outside of the swinging door and leading to the paved parking lot was an inclined way having a gradient varying from 2½ to 6½ per cent. The inclined way was composed of concrete which had been steel-troweled but not roughened.

On the day of the accident in question the respondent had been shopping in appellant's store. Having completed her shopping, she attempted to leave the store by the rear exit and after passing through the door and having taken about two steps beyond the rubber mat and while on the concrete slope, she slipped and fell, sustaining injuries which were the basis of her action for damages. At the time of the accident, the sun was shining and the ramp was dry and there were no foreign substances upon it. Plaintiff testified that "it was very slippery there when I put my hand down."

An ordinance of the city of Los Angeles was received in evidence over the objection of appellant.[1] This ordinance required that the surface of all ramps "shall be roughened or shall be of non-slip material." The evidence established that the inclined way on which the respondent fell was constructed of cement, had been steel-troweled but not roughened, and its coefficient of friction varied between .18 and .30; that any surface with a coefficient of friction less than .275 was slippery; that ice has a coefficient of friction of .10.

Over the objection of appellant, an expert witness called by appellant was cross-examined by respondent as to the construction of the inclined way approaching the doorway from the inside of the store, and by his testimony it was established that this inclined way had a gradient of 9 per cent, was surfaced with asphalt tile onto which had been affixed strips of carborundum to give traction to persons walking across it.

Appellant makes three assignments of error. Appellant asserts that the court erred in admitting into evidence the ordinance hereinbefore set forth and in instructing the jury that a violation thereof raised the presumption of negligence on the part of appellant. Its assertion of error is based upon

[1]Section 91.0101(b). "The purpose of this Article is to safeguard the life, limb, health, property and public welfare by regulating and controlling the design, construction, quality of materials, use and occupancy, location and maintenance of all buildings and structures erected or to be erected . . ."

Section 91.3306(a). "General. A ramp conforming to the requirements of this section may be used as an exit."

Section 91.3306(f). "Surface. The surface of ramps shall be *roughened* or shall be of *non-slip material*." (Emphasis supplied.)

the claim that the ordinance is so uncertain as to not establish any standard or norm of conduct in that the word "ramp" has no established meaning and, therefore, the appellant could not ascertain whether or not the inclined way on which the respondent fell was a ramp within the meaning of the ordinance; and that the words "non-slip material" have no established meaning and, therefore, appellant was unable to determine what material it was compelled to use in order to comply with the ordinance.

We find no merit in these contentions. [■■ In order to meet the constitutional test of due process, an ordinance, like any other statute, may not forbid or require the doing of an act "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." (*Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 [59 S.Ct. 618, 83 L.Ed. 888]; *People* v. *McCaughan*, 49 Cal.2d 409, 414 [317 P.2d 974].) ■■ The ordinance here, however, does not fail to meet the requirements of due process. The word "ramp" has a common meaning and indicates a way or passageway connecting two different levels on an inclined plane. (Webster's New World Dictionary (World Pub. Co., 1953), p. 1203; The American College Dictionary (Random House, 1959), p. 1002; Webster's Twentieth Century Dictionary (World Pub. Co., 1956), p. 1491.) The ordinance in question makes it clear that it was used in this sense in the code. In defining "exit" the ordinance provides: "Exit—A passageway from a portion of a building to the exterior ground surface including every intervening doorway, passageway, stairway or *ramp*." (Emphasis added.) The portion of the premises upon which respondent fell was clearly a ramp within the meaning of the ordinance.

■■ The words "non-slip material" are also sufficiently definite when read in context with the ordinance to convey to anyone affected by the ordinance their meaning. It will be noted that the ordinance requires either roughening of the surface, or the use of nonslip material, indicating that the material to be used shall have the same effect as the roughening of the surface. Further, the word "slip" has a common meaning, that is, to slide or accidentally lose one's footing or balance, and the words "non-slip" as applied to the word "ramp" could only mean material designed to prevent one from slipping.[2]

[2]For the meaning of the word "slip" see: The American College Dictionary, p. 1137; Webster's New World Dictionary, p. 1372; The Oxford

■ It is to be further noted that even were we to hold that the words "non-slip" were too uncertain to establish any norm by which a person affected by the ordinance might govern himself, the ordinance would still be effective for the phrase "non-slip material" is entirely severable from the provisions of the ordinance permitting as an alternate method of treating the surface of the ramp, the roughening thereof and no claim is made that the appellant did not understand the meaning of that portion of the ordinance and the evidence is clear that it made no attempt to comply with it.

■ Appellant's assertion that the court erred in permitting respondent to cross-examine the witness Shields as to the condition of the ramp inside the premises cannot be sustained. The objection made to this examination was that the testimony sought to be elicited on cross-examination was irrelevant and had no bearing upon any of the issues in the case. There might be some substance to this objection were it not for the fact that the witness had repeatedly testified that he did not know the meaning of the term "non-slip material" and had been quite evasive in answering questions designed to show that the materials used on the outside ramp were not in fact nonslip materials as the witness had testified on direct examination. The respondent was, therefore, justified in seeking to test his knowledge of what were nonslip materials by showing his knowledge of the use of strips of carborundum upon the ramp immediately adjacent to the scene of the accident, but inside the premises. The trial judge has a wide discretion as to the scope of cross-examination, and we cannot say that he here abused that discretion.

■ The third and last assignment of error is so lacking in substance and is so hypertechnical as to hardly merit discussion. At the request of the plaintiff, the trial judge instructed the jury as to the meaning of the term "proximate cause" by giving BAJI Number 104 which reads as follows:

"*The* proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. It is the efficient cause— the one that necessarily sets in operation the factors that ac-

English Dictionary, vol. 9 II, 8, p. 219; Webster's New International Dictionary, 2d ed., p. 2365. For the effect of the prefix "non" as giving a negative force to the verb to which it is attached, see: The American College Dictionary, p. 824; Webster's New World Dictionary, p. 997; Webster's Twentieth Century Dictionary, pp. 1218-1219; Webster's New International Dictionary, 2d ed., pp. 1660 and 1661.

complish the injury. It may operate directly or through intermediate agencies or through conditions created by such agencies." (Emphasis added.)

The appellant requested an instruction identical in wording with the exception that it substituted for the article "the" which we have italicized above, the article "a." Appellant asserts that the use of the article "the" would lead the jury to believe that there could be but one proximate cause of an accident, but that they would not have been so misled had the instruction requested by it been given. We do not believe that any jury could have been misled by the use of the article "the" rather than the article "a" and certainly, if appellant earnestly desired to clarify the matter, it could have requested and the court certainly would have given BAJI instruction Number 104-B.[3] Further, although there was little or no evidence of contributory negligence on the part of the plaintiff, the jury was instructed upon that issue and instructed that if the plaintiff were negligent and her negligence *proximately contributed to the happening of the accident, she could not recover,* thus making it clear to the jury that the negligence of the plaintiff might be a contributing cause to the accident even though the defendant was also negligent.

Judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

---

[3] "When the negligent acts or omissions of two or more persons, whether committed independently or in the course of jointly directed conduct, contribute concurrently and as proximate causes to the injury of another, each of such persons is liable [in the absence of contributory negligence]. This is true regardless of the relative degree of the contribution. [It is no defense for one of such persons that some other person, not joined as a defendant in the action, participated in causing the injury] [even if it should appear to you that the negligence of that other person was greater in either its wrongful nature or its effect.]"