[Civ. No. 10538.   Third Dist.   Oct. 30, 1962.]

ARNOLD CONRAD, Petitioner, v. THE SUPERIOR COURT OF TEHAMA COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

*Assigned by Chairman of Judicial Council.

McPherson & Mulkey and Loyd H. Mulkey, Jr., for Petitioner.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and R. M. Momboisse, Deputy Attorney General, for Respondent and Real Party in Interest.

PIERCE, J.—Petitioner seeks a writ of prohibition restraining the superior court from further proceedings based upon an information in four counts charging petitioner with violations of California's Corporate Securities Law, familiarly known as the "Blue Sky Law" (Corp. Code, § 25000, et seq.) After demurrer to an original information had been sustained, an amended information was filed, demurrer thereto was overruled and a motion to dismiss was denied. Thereafter a not guilty plea was entered. The specific sections stated in the amended information are sections 26104, subdivision (a), 25500 and 25152. And section 25003 is incidentally relevant.

Section 25500 prohibits any company from selling or offering or negotiating for the sale of any security of its own issue (with exceptions not here pertinent) "until it has first applied for and secured from the commissioner a permit authorizing it so to do."

Section 25003 defines "Company" as including " (a) All domestic and foreign private corporations . . . "; also " (c) Individuals selling, offering for sale, negotiating for the sale

of, or taking subscriptions for, any security of their own issue.''

Section 26104, subdivision (a), makes it a public offense of felony proportion for any person knowingly to authorize, direct, aid in the issue or sale of any security ''in nonconformity with a permit of the commissioner then in effect authorizing such issue, or contrary to the provisions of this division, or of the Constitution of this State.''

Section 25152 provides that the law ''does not apply to the sale of securities when (a) made by or on behalf of a vendor not the issuer or underwriter thereof who, being a bona fide owner of the securities, disposes of his own property *for his own account, and (b) the sale is not made, directly or indirectly, for the benefit of the issuer* or an underwriter of the security, or for the direct or indirect promotion of any scheme or enterprise with the intent of violating or evading any provision of the Corporate Securities Law.'' (Emphasis supplied.)

The contention of petitioner is that the evidence at the preliminary hearing was insufficient to justify petitioner's being held to answer for the crimes charged. Specifically, his principal contention is that neither the foregoing sections, nor any other provisions of the Corporate Securities Law, make it a crime for an individual to sell or offer for sale corporate securities which he owns for the benefit of the corporation which issued such shares; and that if section 25152 were to be so construed it would be unconstitutional as a denial of due process. His secondary contention is that even if such act of selling for the corporate benefit *is* a crime, the evidence at the preliminary hearing was insufficient to establish reasonable and probable cause that petitioner committed such an act.

Our review of the regulation involved and the cases construing it establishes that acts charged against petitioner are criminal, and that the statutes are constitutional; and our review of the evidence before the committing magistrate convinces us that reasonable and probable cause was established.

The evidence was this: Petitioner, on July 21, 1959, met at the Elks Club in Red Bluff with four individuals, the alleged victims. At this meeting the agreements which are the basis of four counts of the information were initiated. The four individuals had previously been solicited by petitioner to subscribe, and had actually subscribed, substantial sums of money for the purposes of a corporation to be organized under the laws of Nevada to carry on placer gold-dredging exploration and operation near Ely, Nevada. In the prospectus presented

by petitioner he had described himself as the "principal under-writer" of the shares to be issued. The corporation, the White Pine Mining Company, thereafter had actually been organized and an application (containing the prospectus mentioned above) signed by "Arnold Conrad" had been filed with the California Commissioner of Corporations. This was in March, 1959. On this application no permit had been issued. In fact, said application had, on July 8, 1959, been removed from the "pending calendar" of the corporation commissioner (and was later declared "abandoned"). The corporation commissioner's file (introduced into evidence by petitioner at the preliminary hearing) discloses that petitioner was then fully aware that no permit *would* issue on the application without radical amendment. At the outset rather extensive demands for more complete data had been made by the commissioner; a memo in the file by Deputy Commissioner J. T. McMenamin states: "Mr. Conrad is rather disturbed over the request by our engineer for a more complete engineers report . . . Mr. Conrad stated that he might withdraw the application and sell all of the stock of the company in New York. He will notify us in due course whether he desires to submit another engineers report or abandon the application." No compliance with the demands of the commissioner was ever made, and there is nothing to indicate that compliance was ever contemplated.

At the meeting held July 21, 1959, petitioner and the four individuals mentioned in the information, Handley, Tandy, Reddy and Pettinger were present. Petitioner represented that he controlled the corporation. He informed those at the meeting "he was the president and the general manager of it and he had the say of what there would be done, if and when." The secretary of the corporation was Al Burnham, his son-in-law. (Later when Conrad was requested to give the name of a dredging company with whom he was dealing and to give an accounting for funds expended he informed Tandy, so the latter testified: "It was none of my business, that when he got ready he would present the essence [*sic*] of the money that he had or the accounting of the money when he felt he was ready and that he would not give any name of the company whom he felt was better than Yuba.")

At the meeting in July 1959 petitioner informed those present that more money was needed for exploratory drilling. He represented that these tests were a condition precedent demanded by Yuba Consolidated before it would agree to

work the property. Petitioner informed them that if they would advance additional sums ($300 apiece) to the corporation, petitioner would give them his personal shares which were then in escrow (although as shown above none, in fact, were authorized to be issued). He presented four separate agreements to each of the "investors" present containing provisions to this effect, each of which agreements also states that "the party of the second part [Conrad] will be transfering and assigning his personal stock to the party of the first part [the investor] and all monies will be used for the benefit of the White Pine Mining Co."

Based upon these representations, checks were issued by each of the four, which were later mailed to the corporation at its Nevada office, after counterparts of the aforesaid agreements, each purporting to bear the signature of "Arnold Conrad" had been received by the several investors. These checks were cashed and honored.

· ▮ This evidence creates a clear picture of a promoter of a speculative mining venture soliciting and obtaining money from four individuals upon representations and, in fact, an agreement, that they were to receive his personal shares in the corporation, represented to be then issued and in escrow, with a further agreement that the money thus obtained would be used for the benefit of the corporation; all of this done when, in fact, the corporate shares had not been issued and when the application before the California Corporation Commissioner for their issuance had been removed from the "pending file" and was later abandoned.

That such acts constitute a criminal violation of the California Securities Law has been the settled law of this state since 1931. In that year it was so held in *People* v. *Smith,* 111 Cal.App. 177 [295 P. 105], under provisions of said law much less explicit in defining such acts as criminal than the present code sections. The facts in the *Smith* case are strikingly similar to the facts here. The code section then in effect permitted a bona fide sale of a security by the owner " 'who sells the same for his own account; and not for the purpose of evading the provisions of this act.' (Stats. 1929, p. 1254.)" The theory of the prosecution was that it was proper to put the question to the jury "whether the defendant was in fact the owner of the stock sold and was selling it in a *bona fide* way, whether he was selling the same for his own account and not for the benefit of the corporation. . . ." (P. 179.) The court sustained this contention and also states (on pp. 186, 187):

". . . The evidence is sufficient to show that the sales of stock described in the information were not sales of securities by an owner who was not the issuer thereof; that such sales were not made in a *bona fide* manner by an owner for his own account alone; . . . *but in part for the account of the corporation,* and made with the purpose of securing funds to sufficiently develop the property. . . . We think the evidence is sufficient to show that the entire proceeding was carried out by the appellant for the purpose of evading the provisions of the Corporate Securities Act." (Emphasis supplied.)

In *People* v. *Mason*, 86 Cal.App.2d 445 [195 P.2d 60], decided in June 1948, when the section (then § 2, subd. (c)-3; 2 Deerings Gen. Laws, Act 3814; now Corp. Code, § 25152) read substantially as it does now, and where again the facts were similar to the facts of the instant case the court says, after quoting the section, on page 454: ". . . This language is tantamount to declaring it to be a felony if by the sale of a security prior to the issuance of a permit to the issuer by the Corporation Commissioner the vendor *causes the issuer thereof to profit or to be advanced by such sale."* (Emphasis supplied.)

This language is quoted in *People* v. *Mills*, 148 Cal.App.2d 392, 406 [306 P.2d 1005], where under the facts there present, it was held "That Mills was selling for the benefit of the corporation is fairly inferable." (See also *People* v. *Sears*, 124 Cal.App.2d 839, 847 [269 P.2d 683].)

Petitioner argues that the statement quoted above from *People* v. *Mason, supra,* and repeated in *People* v. *Mills* was but dicta and that the holding of the two cases was that the defendants there involved were, as in *People* v. *Smith, supra,* 111 Cal.App. 177, actually the corporation's "alter ego" and therefore in legal contemplation the issuers of the securities. We do not think these cases are susceptible to that narrow interpretation. There is, in *Mills*, reference to the *"alter ego"* doctrine (on p. 406 of the opinion), but, as noted above, it was also stated that a sale was being made of corporate shares *owned by the defendant and for the benefit of the corporation.*

Assuming, however, but not deciding, that the prosecution *here* is compelled to rely upon the *"alter ego"* theory, we find in the transcript of the preliminary hearing representations by Conrad which seem to add up to a statement that he WAS the corporation, and effectually both the issuer and (as shown by his prospectus) the "principal underwriter" of

the shares, in which event the sales made here equally violate the Corporate Securities Law. (§§ 25500 and 25003.)

Petitioner's next contention is that since the only statutory proscription against the selling without a permit of privately-owned shares not on the seller's own account but for the benefit of the corporation is contained in a code section (§ 26104, subd. (a)), which was written into the law as a protection to the seller in that it expressly excepts sales of such privately-owned shares already issued and states the exception does not apply to sales for the benefit of the corporation, the latter limitation is effectually an exception to the exception. Therefore, petitioner argues the statute lacks that certainty which due process demands for laws creating crimes. (Citing *Peterson* v. *Safeway Stores, Inc.*, 185 Cal.App.2d 24, 27 [7 Cal.Rptr. 924] ; *MacLeod* v. *City of Los Altos*, 182 Cal. App.2d 364, 369 [6 Cal.Rptr. 326].) This contention was not raised in the *Smith, Mason, Sears* or *Mills* cases cited above.

Although, generally speaking, exceptions and exemptions in statutes imposing burdens are to be construed liberally in favor of the public; narrowly against the claimant (*Marin Municipal Water Dist.* v. *Chenu*, 188 Cal. 734 [207 P. 251]), legislation which imposes a penalty, and particularly those defining crimes must do so with "a reasonable degree of certainty." (*In re Newbern*, 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116].)

Our Supreme Court, quite recently, has expressed the rule thus, per Justice Traynor, in *People* v. *McCaughan*, 49 Cal.2d 409 [317 P.2d 974], at page 414:

" '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' (*Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322] ; [citing other cases].) A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed. . . .' "

Guided by this test we find it impossible to accept petitioner's argument that the statutes challenged lack clarity. We use "statutes" in the plural advisedly because Corporations Code section 25152 must be read in conjunction with Corporations Code section 26104, subdivision (a), which sets forth the violations creating the public offense, reaching any person who "[k]nowingly authorizes . . . or sells . . . any security, in nonconformity with a permit of the commissioner

then in effect authorizing such issue, or contrary to the provisions of this division. . . .'' Considered in this context there is nothing vague or uncertain in the provision of section 25152 which prohibits a seller from selling his own securities without a permit unless he sells them for his own account and not for the benefit of the corporation. ▮ Indeed, it could reasonably be said that since a sale of securities without any permit is actually a sale ''in nonconformity with a permit of the commissioner then in effect authorizing such issue'' the acts here constituted a public offense under the first clause in said section 26104, subdivision (a), and without necessity to refer to section 25152.

▮ The other contentions may be briefly disposed of. First, it is urged that in the written agreements in evidence the signature reading ''Arnold Conrad'' was not proved to be petitioner's signature. Proof, however, that he presented the agreements and made the representations stated therein verbally to the parties assembled at the meeting, together with the proof of successive events is ample to support the charge even without the written document. Moreover, the agreements were also admitted in evidence without objection to the foundation laid. ▮▮ Secondly, it is contended that there is no proof that the money solicited and paid was actually used for the benefit of the corporation. That, however, was the represented purpose for which it was supposed to be used, it was the purpose stated for its use in the application filed. And if it was actually diverted by petitioner for some other use he is not relieved from the offense charged, but merely compounds his offense by adding grand theft as ground for another count to the accusation. ▮ Thirdly, it is urged that the preliminary hearing must fall because the evidence thereat rests entirely upon the uncorroborated testimony of accomplices. But these complaining witnesses were not accomplices; they were, if their testimony is to be credited, as it must be here, victims. (See *Willens* v. *Hagge,* 154 Cal.App.2d 242, 243 [316 P.2d 29].) Even if an elastic imagination would permit their classification as accomplices, uncorroborated testimony is sufficient to hold a defendant to answer. (*People* v. *McRae,* 31 Cal.2d 184 [187 P.2d 741].) ▮ Lastly, it is contended that there is no proof that petitioner had knowledge that the things which he did violated the law. But such knowledge is clearly inferable not only from the testimony of the complaining witnesses, but is brought into full light and focus

by the file of the Corporations Commissioner which petitioner himself introduced at the hearing.

The order to show cause is discharged and the writ is denied.

Peek, P. J., and Schottky, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied December 26, 1962. Peek, J., did not participate therein.