256 Cal.App.2d 425 (1967)
64 Cal. Rptr. 733
THE PEOPLE, Plaintiff and Appellant,
v.
ANTHONY LLOYD CHRISMAN, Defendant and Appellant.
Docket No. 5908.
Court of Appeals of California, First District, Division One.
November 28, 1967.
*427 R. Donald Chapman, Public Defender, for Defendant and Appellant.
Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Appellant.
*428 SIMS, J.
A seven-court indictment charged Anthony Lloyd Chrisman with furnishing heroin to another, in violation of section 11501 of the Health and Safety Code, on August 12 and August 13, 1965; Chrisman, Patricia Marie Haydon, and Conrad A. Berger with conspiracy (Pen. Code, § 182) to commit burglary (Pen. Code, § 459), and grand theft (Pen. Code, § 484) in the month of August 1965; Berger with receiving stolen property in violation of section 496 of the Penal Code in the month of August 1965; Chrisman and Haydon with conspiracy (Pen. Code, § 182) to possess heroin (Health & Saf. Code, § 11500) in August 1965; Chrisman and Haydon with transportation of heroin, in violation of section 11501 of the Health and Safety Code, on August 28, 1965; and Haydon with driving a vehicle while addicted to and under the influence of narcotics, in violation of section 23105 of the Vehicle Code, on August 28, 1965.
Chrisman was found guilty on each of the counts in which he was charged following a trial by the court on a stipulated record of prior proceedings. The court granted him a new trial on the charge of transportation of heroin and the People have appealed from that order. He was sentenced to concurrent terms in state prison, with six charged and proved prior convictions, on each of the two counts of furnishing heroin, and on each of the conspiracy charges. He has appealed from the judgment convicting him of these offenses.
Chrisman attacks his conviction on the first two counts on the grounds of insufficiency of the evidence because there was no evidence that the substance supplied by him to the alleged recipient was in fact a narcotic, and because the only evidence supporting the charges of supplying a narcotic to another was the uncorroborated testimony of an accomplice. He contends that the evidence supporting his conviction on the two conspiracy charges was obtained by an illegal search and seizure. This conclusion is postulated upon the premise that the arrest of defendant, which accompanied the search, was based on a warrant of arrest which had been issued without reasonable cause, and was not otherwise supported by probable cause. Finally, he asserts that one of the convictions for conspiracy must be set aside to prevent multiple punishment in violation of the provisions of section 654 of the Penal Code. It is concluded the principles upon which defendant relies do not control the record before this court; that there is sufficient evidence to sustain the convictions on the first two counts; that the evidence which sustains the defendant's convictions *429 on the two conspiracy counts was not the product of an illegal search and seizure, and that no prohibited multiple punishment is involved.
The People, on their appeal, contend that the trial court, in granting a new trial, erroneously concluded that the evidence offered in support of the charge of transportation failed to show more than a legally unrecognizable trace of contraband. Although there may be circumstantial evidence of a greater amount, it cannot be held, as a matter of law, that the court abused its discretion in granting a new trial.

Proceedings Prior to Trial
On August 25, 1965, a complaint was filed in the municipal court charging Chrisman with two counts of violation of Health and Safety Code section 11501, and a warrant was issued for his arrest. On August 28, 1965, Chrisman and Haydon were arrested by investigators from the office of the Santa Clara district attorney. On August 30, 1965, a complaint was filed in the municipal court charging Chrisman and Haydon with a violation of Health and Safety Code section 11501, transportation of heroin, and with conspiracy to commit a violation of Health and Safety Code section 11500, possession of heroin. Haydon was also separately charged with a violation of Vehicle Code section 23105, driving a vehicle while under the influence of narcotics. On August 30, 1965, the municipal court issued a warrant for the search of the premises of Berger. On the same day, a complaint was filed in municipal court charging Berger with a violation of Penal Code section 496, receiving stolen property, and a warrant was issued for his arrest.
On September 1, 1965, the grand jury of Santa Clara County heard testimony concerning Chrisman, Haydon and Berger, and returned the indictment referred to above.
The accused were arraigned in superior court, and on September 17, 1965, each moved that the indictment be set aside, pursuant to Penal Code section 995. Hearing on the motion to dismiss was continued so that proceedings could be taken in the municipal court to attack the warrant issued for Chrisman's arrest.
On October 5, 1965, Chrisman filed a notice of a motion in the municipal court to quash the warrant of arrest and to suppress evidence secured as a result of the execution of that warrant. On October 6, 1965, Berger filed a motion to quash the search warrant issued against him, and to suppress evidence *430 secured on its execution. The two motions were joined together by order of the municipal court, and heard on October 7, 1965. On October 8, 1965 the motions were denied.
On October 15, 1965, at the request of the defendants, the records of the proceedings in the municipal court were admitted into evidence in the superior court in support of the motion to dismiss. The following week, Chrisman filed his motion to suppress evidence in the superior court.
On November 26, 1965, the motion to dismiss, and the motion to suppress evidence were heard, and each was denied. On the same day, Chrisman and the other defendants entered pleas of not guilty as to each count of the indictment. Chrisman also denied each of his alleged priors.
On December 9, 1965, Chrisman, and the other defendants, filed a petition for a writ of prohibition and for writ of mandamus in this court (1 Civ. 23325). On January 4, 1966, the petition was denied without a hearing. On January 12, 1966, the defendants filed a petition for hearing in the Supreme Court. On February 2, 1966 the petition for hearing was denied.
On February 16, 1966, the matter came on for trial of the defendant Chrisman.[1] He personally, and through his counsel, waived a jury trial. It was stipulated that the matter be submitted upon the transcript of the proceedings before the grand jury, and the transcript of the proceedings held in the municipal court, together with all the documents filed in both the municipal and superior courts in connection with either the Chrisman or Berger proceedings. Evidence was also offered and received to prove the prior convictions.
The facts as adduced in the foregoing proceedings are set forth below as they bear upon the issues presented.

I. Sufficiency of the evidence to support the convictions of supplying narcotics to another

A. Evidence of narcotic nature of the substance furnished

Joy Anne Osborne testified that she became addicted to heroin and was using it for about three and one-half months prior to September 1, 1965; that, through other addicts, she became acquainted with Chrisman, who was also addicted to heroin, about a month after she started using that narcotic; *431 that he bought heroin in San Francisco and they used it together; that she got narcotics from him throughout the period of their acquaintanceship; and that he furnished her with heroin specifically on August 12 and August 13, 1965.
She described the place, the person from whom, and the manner in which the heroin was obtained in San Francisco, and the balloons in which it was packaged. She related that she and Chrisman would have an injection of heroin before driving back to Santa Clara, and that he had instructed her to swallow any heroin in her possession if they were stopped by the police. She described and identified the type of paraphernalia used by Chrisman for heating and injecting the heroin, and told the manner in which it was used.
She stated that she confided in her gynecologist that she was addicted and wanted to kick the habit; that the doctor referred her to the district attorney's office; and that after last using heroin on August 13 she went to Agnews State Hospital on that day; and that there she underwent withdrawal symptoms and was very sick.
A doctor who examined Chrisman on August 28, 1965, testified that he was then actively addicted to heroin. The doctor testified that if a person is actively addicted to narcotics he will undergo a withdrawal syndrome if the narcotics are discontinued. He described the physical symptoms of such withdrawal.
A technician testified that tests indicated the presence of heroin on the paraphernalia taken from Chrisman. Mrs. Osborne had identified this equipment as similar to that which she had used with him.
[1a] From the outset, defendant has contended that the testimony of Mrs. Osborne alone was insufficient to establish the nature of the substance she was allegedly furnished. In any charge of furnishing contraband to another at a time which antedates the apprehension of the furnisher, the prosecution may be faced with the fact that it was intended that the recipient consume the contraband, and that it was in fact so expended.
[2] "Ordinarily, the character of such substance is proved by a trained expert who has made a chemical analysis thereof. Here no such proof was offered because none of the powder was available for analysis. This, however, is not fatal to the People's case for the corpus delicti may be proved by circumstantial evidence. [Citations.]" (People v. Candalaria (1953) 121 Cal. App.2d 686, 689 [264 P.2d 71]; and see People v. *432 Winston (1956) 46 Cal.2d 151, 155 [293 P.2d 40]; People v. Ihm (1966) 247 Cal. App.2d 388, 392 [55 Cal. Rptr. 599]; People v. Clemmons (1962) 208 Cal. App.2d 696, 700-701 [25 Cal. Rptr. 467]; People v. Sanchez (1961) 197 Cal. App.2d 617, 621-622 [17 Cal. Rptr. 230]; People v. Shaffer (1960) 182 Cal. App.2d 39, 43 [5 Cal. Rptr. 844]; People v. Hines (1954) 128 Cal. App.2d 421, 424 [275 P.2d 585]; and People v. Tipton (1954) 124 Cal. App.2d 213, 216-217 [268 P.2d 196]; but cf. People v. McLean (1961) 56 Cal.2d 660, 662-663 [16 Cal. Rptr. 347, 365 P.2d 403]; and People v. McChristian (1966) 245 Cal. App.2d 891, 897 [54 Cal. Rptr. 324].)
In each of the foregoing cases, and numerous others,[2] there was expert testimony, which supplemented the testimony of the user, showing that the method of administration, the symptoms resulting, or other matters related by the user, were indicative of the use of contraband. In Tipton, the court stated: "The prosecution need not physically produce the narcotic. It may prove that the substance was a narcotic by the testimony of the user and by the testimony of a doctor that, in his opinion, the substance used was a narcotic." (124 Cal. App.2d at p. 217; italics added.) Defendant contends that the emphasized language, and the general practice as revealed by the cases which have been cited, demonstrate that the testimony of the user alone, without expert testimony, can never be sufficient to identify the nature of the substance.
Such, however, is not the law. In Winston, the Supreme Court observed: "Defendant first contends that the corpus delicti was not proved for the first three counts, in that there was no proof that the substance smoked was marijuana. While conceding that the prosecution need not physically produce the narcotic, he insists that to prove a substance is a narcotic, there must be not only the testimony of the user but also that of a medical doctor or expert. (People v. Candalaria, 121 Cal. App.2d 686 [264 P.2d 71]; People v. Tipton, 124 Cal. App.2d 213 [268 P.2d 196].) Although in the cited cases, in addition to the testimony of the users, experts testified that in their opinion, from the description given by the users and their reactions from its use, the substance was a narcotic, neither case holds that such expert evidence is required for a conviction if the users demonstrate a knowledge of the *433 narcotic as such.... The competency of the girls to testify that the cigarettes were marijuana was shown by their knowledge of it from previous use. In view of such experience, the trial court permitted the girls to identify the substance furnished them by defendant as marijuana. `The weight, of course, to be given this testimony was for the jury.' (People v. Candalaria, supra, 121 Cal. App.2d 686, 690.)" (People v. Winston, supra, 46 Cal.2d at pp. 155, 156; and see People v. Patterson (1959) 169 Cal. App.2d 179, 186 [337 P.2d 163]; People v. Flynn (1958) 166 Cal. App.2d 501, 510-511 [333 P.2d 37]; People v. Drake (1957) 151 Cal. App.2d 28, 44 [310 P.2d 997]; People v. Rios (1954) 127 Cal. App.2d 620, 622 [274 P.2d 163].) The situation is analogous to the principles applicable to opinion and expert testimony, which have been phrased as follows: "The qualifications of an expert witness are for the trial court [citation] and any question as to the degree of his knowledge goes to the weight of his testimony rather than to its admissibility. [Citations.]" (People v. Penny (1955) 44 Cal.2d 861, 866 [285 P.2d 926]; accord: People v. Allen (1967) 254 Cal. App.2d 597, 604 [62 Cal. Rptr. 235]; People v. Clemmons, supra, 208 Cal. App.2d 696, 701; People v. Lewis (1962) 206 Cal. App.2d 82, 85 [23 Cal. Rptr. 495]; People v. Symons (1962) 201 Cal. App.2d 825, 831 [20 Cal. Rptr. 400] [cert. granted (1963) 372 U.S. 711 [10 L.Ed.2d 126, 83 S.Ct. 1020], reversed and remanded for consideration in light of Douglas v. California (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814]. See also (1965) 380 U.S. 966 [14 L.Ed.2d 156, 85 S.Ct. 1113]]; People v. Mack (1959) 169 Cal. App.2d 825, 830-831 [338 P.2d 25]; People v. Flynn, supra, 166 Cal. App.2d 501, 509; and People v. Johnson (1957) 153 Cal. App.2d 564, 568 [314 P.2d 751].)
In People v. McLean, supra, the court concluded as a matter of law, "In this case it is clear that the witness did not know what marijuana was or its effects. [Citation.]" (56 Cal.2d at p. 663.) The alleged victim was a 16-year-old high school junior. The court observed that the witness "was inexperienced with narcotics. Her only contact with drugs was the smoking on `about' seven occasions of cigarettes which she thought contained marijuana. There was no evidence that what she smoked on the five occasions subsequent to ... this case was in fact marijuana." (Id., pp. 662 and 663.) Although the teetotaller would not be expected to distinguish between bourbon and scotch, once a person imbibes regularly, his opinion on that subject should be relevant, *434 and, under the general rules, be weighed in the light of his experience. The heavy penalties involved should not of themselves require an exception to the general rule in the case of narcotics. McLean should not be applied beyond its express facts, but should be reconciled with the principle from Winston, quoted above.
[1b] The witness' unimpeached testimony reflects that she had used heroin from another source before securing it from the defendant, and that defendant and she both used the same substance which he customarily secured. Defendant was found to be addicted to heroin. The paraphernalia found in his car, where the witness indicated it would be, had traces of heroin. The witness further testified that she underwent withdrawal symptoms.[3] This evidence is sufficient to establish her competency to testify concerning the nature of the substance. The corpus delicti having been established, the further acts and declarations of the defendant, to which the witness testified, may be used to corroborate that conclusion.
Defendant suggests that the substance furnished, which was represented to be a narcotic, may have been some substitute (cf. Health & Saf. Code, § 11503; People v. McChristian, supra, 245 Cal. App.2d 891, 896; and People v. Lewis, supra, 206 Cal. App.2d 82, 83-84); and that the alleged withdrawal symptoms may merely have been a touch of influenza. He cites learned authority for the proposition that if the witness had related her specific symptoms on taking the substance, or her specific reactions on withdrawal, her testimony might have revealed that they were occasioned by something other than a narcotics. (Maurer and Vogel, Narcotics and Narcotic Addiction (2d ed. 1962) pp. 73-84, and 90-114.) In this case, however, defendant, by stipulating to the record, relinquished his right to cross-examine the witness, and to introduce expert testimony on the subject. The defendant cannot be convicted because of the weakness of his presentation, but where the prosecution has introduced prima facie proof on the issues of the case, this court cannot disregard it because of speculation or conjecture that if it were subjected to more rigorous *435 examination, it might prove fallible. The other evidence in the record supports a contrary inference. It may be assumed that defendant would not have waived the opportunity to produce the witness' regular physician or those who treated her at Agnews if their testimony would have been contrary to the otherwise unimpeached conclusions of the witness.

B. Necessity of corroboration

In her testimony before the grand jury, Mrs. Osborne testified that she and Chrisman used heroin together at the same time; that they went to an apartment in San Francisco together for the purpose of obtaining narcotics; that he bought the heroin and she got it from him; that he was not employed and got the funds to buy heroin from stealing cigarettes; that every day, for a period of about two months, they stole from grocery stores in the area from San Francisco to Santa Cruz, Watsonville and Hayward; that Chrisman sold the cigarettes to Berger; and that Chrisman gave the money to a man in San Francisco who would leave the apartment and come back with the heroin.
Defendant contends: "In the present case, appellant and Osborne were conspirators and accomplices as a matter of law. Both were addicts; both stole together to obtain money to support their illegal habit; both conspired to supply the drug to each other; both traveled to San Francisco to obtain the drug they needed so desperately; and while appellant actually concluded the transaction, he acted for both. Upon receiving the drug, both would immediately inject it into their veins. Obviously they acted together in a prearranged plan." He points out that, on substantially the same facts, Miss Haydon, who apparently supplanted Mrs. Osborne, was jointly charged with Chrisman with conspiracy to possess heroin.
It is uniformly recognized that a minor is not an accomplice because he has participated in narcotic transactions which violate laws passed for his protection. (See Health & Saf. Code, §§ 11502 and 11532; and former § 11714.) In People v. Poindexter (1958) 51 Cal.2d 142 [330 P.2d 763], the court said: "Defendant next contends that his convictions should be reversed because Hoffman was an accomplice within the meaning of section 1111 of the Penal Code, and the trial court failed to instruct on the necessity of corroboration of his testimony. But that section defines an accomplice as `one who is liable to prosecution for the identical offense charged against the defendant on trial.' Here defendant was charged with *436 two offenses, to wit: The murder of one minor and the furnishing of narcotics to the other minor. The murder charge was prosecuted upon the theory that the death of the deceased minor resulted directly from defendant's feloniously selling, furnishing and administering narcotics to said deceased minor. Thus neither person to whom defendant furnished narcotics was an accomplice of defendant as to the underlying offenses of selling, furnishing and administering the narcotics to said persons. (People v. Lamb, 134 Cal. App.2d 582 [285 P.2d 941].) To be an `accomplice' within the meaning of the cited section, one `must stand in the same relation to the crime as the person charged therewith and must approach it from the same direction.' (People v. Baskins, 72 Cal. App.2d 728, 731 [165 P.2d 510].) Furthermore, both Hoffman and the deceased were minors to whom defendant feloniously sold, furnished and administered the narcotics. In the prosecution for such offenses, the minors are regarded as victims rather than as accomplices, and the testimony of the minors therefore does not require corroboration. [Citations.] Since neither minor was an accomplice of defendant in the commission of the underlying offenses on which both counts were based, we are of the opinion that Hoffman should not be held in this prosecution to be an accomplice of defendant as to either count." (51 Cal.2d at pp. 149-150. See also People v. De Paula (1954) 43 Cal.2d 643, 647 [276 P.2d 600]; People v. Medina (1961) 198 Cal. App.2d 224-230 [17 Cal. Rptr. 722]; People v. Sanchez, supra, 197 Cal. App.2d 617, 621; People v. Brown (1960) 184 Cal. App.2d 588, 597 [7 Cal. Rptr. 717]; People v. Flynn, supra, 166 Cal. App.2d 501, 513-514; People v. Freytas (1958) 157 Cal. App.2d 706, 713-714 [321 P.2d 782]; and People v. Drake, supra, 151 Cal. App.2d 28, 42.)
In De Paula, the court rationalized as follows: "Since the minor involved is the victim and the offense denounced by section 11714 of the Health and Safety Code is the harmful act to that victim with the resulting harm to society in general, it necessarily follows that in a prosecution under that section the minor involved cannot be held a principal in the sense of being subject to prosecution for the same identical offense, within the meaning of section 1111 of the Penal Code." (43 Cal.2d at p. 647.) This does not indicate, as urged by defendant, that the foregoing authorities are predicated solely on some supervening public policy to protect minors. Society is just as interested in preventing the spread of the drug traffic among adults. For this reason the Legislature *437 has distinguished between possession (Health & Saf. Code, §§ 11500 and 11530), possession for sale (id., §§ 11500.5 and 11530.5), and transporting, importing, selling, furnishing, administering and giving away (§§ 11501 and 11531) the prohibited substances, and increased the severity of the punishment accordingly. Furthermore, defendant's proposed analysis fails to dispose of the fact that the prohibited act of furnishing is not identical with the prohibited act of possession, which can be attributed to the recipient after the transaction, nor does it meet the well-recognized principle that, "To be an `accomplice' within the meaning of the cited section, one `must stand in the same relation to the crime as the person charged therewith and must approach it from the same direction.'" (See People v. Poindexter, supra, 51 Cal.2d at p. 149, and other cases last cited herein.) It is generally recognized that the purchaser of contraband is not the accomplice of the seller, even where no minority is involved. (People v. Lamb (1955) 134 Cal. App.2d 582, 585-586 [285 P.2d 941]; People v. Galli (1924) 68 Cal. App. 682, 684-685 [230 P. 20]; and People v. Freytas, supra, 157 Cal. App.2d 706, 714.) [3] The fact that the recipient may be jointly liable for possession with the furnisher, and so an accomplice to the possession of the contraband jointly held, does not make the recipient an accomplice to the act of selling or furnishing. (See People v. De Paula, supra, 43 Cal.2d 643, 648; People v. Brown, supra, 184 Cal. App.2d 588, 597; People v. Freytas, supra, 157 Cal. App.2d 706, 714.)
In the Freytas case, the court noted, "The purchaser of narcotics is not an accomplice of the seller, as the offense of the purchaser is `possession' and not `selling.' [Citations], exceptions to the above view of an accomplice are recognized in case of a conspiracy, People v. Lima, 25 Cal.2d 573 [154 P.2d 698]." (157 Cal. App.2d at p. 714; italics added.) Defendant contends there is such an exception and this case falls within it. In People v. Lima (1944) 25 Cal.2d 573 [154 P.2d 698], the court recognized: "It is now settled in this state that the thief and the receiver of stolen property are not accomplices [citation]." (25 Cal.2d at p. 576.) It noted a well-established exception to the general rule, and concluded: "Where, as here, the prosecution evidence discloses the existence of a conspiracy or agreement whereby the principal prosecution witnesses were to steal and defendant was to purchase the stolen property, it is both logical and reasonable to hold that they are accomplices in the offense or offenses *438 resulting from execution of such plan." (Id., p. 578; and see People v. Raven (1955) 44 Cal.2d 523, 526-527 [282 P.2d 866]; People v. Bugg (1962) 204 Cal. App.2d 811, 817 [22 Cal. Rptr. 896]; People v. Malone (1959) 167 Cal. App.2d 400, 402 [334 P.2d 217]; and People v. Hamilton (1956) 143 Cal. App.2d 305, 309-310 [299 P.2d 716].) It distinguished the situation where the offense, as here, required the participation of two persons, and statutory provisions prescribed separate offenses for the conduct of each actor. (Id., p. 579; and cf. People v. Clapp (1944) 24 Cal.2d 835, 838-839 [151 P.2d 237].)
In Lima, the proscribed acts, theft and receiving stolen property, are each aimed at protecting society as a whole. More specifically, a third party owner, not one of the actors, is injured when either offense is committed. The same is true of other situations on which defendant relies. In People v. Wayne (1953) 41 Cal.2d 814 [264 P.2d 547] [overruled on other grounds, People v. Snyder (1958) 50 Cal.2d 190, 197 [324 P.2d 1]], it was recognized that generally the person who was solicited to offer a bribe to a public officer would not be an accomplice of the solicitor, but that where the former instituted the solicitation he might be. (41 Cal.2d at pp. 825-826.) In People v. Wallin (1948) 32 Cal.2d 803 [197 P.2d 734], the court held that a murderer could be an accomplice to the offense of being an accessory to her crime. (32 Cal.2d at pp. 808-809.)
In Wallin, the court reviewed the accomplice rule as follows: "The statutory requirement of corroboration is based primarily upon the fact that experience has shown that the evidence of an accomplice should be viewed with care, caution and suspicion because it comes from a tainted source and is often given in the hope or expectation of leniency or immunity. (People v. Coffey, 161 Cal. 433, 438 [119 P. 901, 39 L.R.A.N.S. 704].) Before 1915 there was no statutory definition of an accomplice in this state, and it was held that anyone `who knowingly and voluntarily cooperates with or aids or assists or advises or encourages another in the commission of a crime is an accomplice, without regard to the degree of his guilt.' (People v. Coffey, 161 Cal. 433, 439-440 [119 P. 901, 39 L.R.A.N.S. 704].) The courts experienced some difficulty in the application of this definition, and they began to make arbitrary exceptions of participants who might be characterized as victims, such as women kept in houses of prostitution or transported in violation of the Mann Act. This *439 led in some states to the adoption of a rule similar to that set forth in the 1915 amendment restricting accomplices to those liable to prosecution for the identical offense charged against defendant. (State v. Coffey, 157 Ore. 457 [72 P.2d 35, 38-39].)" (32 Cal.2d at pp. 808-809; and see People v. Bowley (1963) 59 Cal.2d 855, 857-858 [31 Cal. Rptr. 471, 382 P.2d 591, 96 A.L.R.2d 1178].)
Defendant points out that the considerations of "tainted source" and "the hope or expectations of leniency or immunity" are factors which may be present in this case. There is also a suggestion that the substitution of Miss Haydon for the witness gives rise to a "woman spurned" motive. Defendant has confused a plan (stealing cigarettes) to obtain the wherewithal (money) to secure narcotics, with a plan to get narcotics. (Cf. People v. Quinn (1964) 61 Cal.2d 551, 555-556 [39 Cal. Rptr. 393, 393 P.2d 705]; and see part III of this opinion, infra.) It is clear that the second phase was instituted and dominated by Chrisman, and that Mrs. Osborne was dependent on him to secure and furnish to her the heroin with which she satisfied her addiction. The witness was no more an accomplice in the furnishing of narcotics than was the victim in People v. Tipton, supra, whose earnings as a prostitute went to the defendant in payment for the drugs. (See 124 Cal. App.2d at p. 218.)

C. Corroboration

Even if an "elastic imagination"[4] would permit the witness to be classified as an accomplice, the record furnished corroboration of her testimony. The offense, of which she would be an accomplice, if such she were, would appear to be a conspiracy to furnish herself with narcotics. The corpus delicti may be established by her testimony. [4] "The only corroboration necessary for the evidence of an accomplice under the statute is that which tends to connect the defendant with the commission of the crime, not evidence of the corpus delicti. [Citations.] The corroborative evidence may be slight and entitled to little consideration when standing alone. [Citation.] Defendant's own admissions are sufficient corroboration. [Citation.] Finally, corroborative evidence may be circumstantial." (People v. Wade (1959) 53 Cal.2d 322, 329 [1 Cal. Rptr. 683, 348 P.2d 116]; and see Pen. Code, § 1111; *440 People v. Sanchez (1965) 232 Cal. App.2d 812, 816-817 [43 Cal. Rptr. 131]; People v. Lewis (1963) 222 Cal. App.2d 136, 141-144 [35 Cal. Rptr. 1]; People v. Granados (1963) 220 Cal. App.2d 393, 394-397 [33 Cal. Rptr. 834]; People v. Moore (1963) 211 Cal. App.2d 585, 592-594 [27 Cal. Rptr. 526]; and People v. Buono (1961) 191 Cal. App.2d 203, 215-218 [12 Cal. Rptr. 604].) Parenthetically, it may be noted that, in any event, the witness' uncorroborated testimony was sufficient to sustain the indictment, and there was no error in denying the motion to dismiss as to counts I and II. (People v. McRae (1947) 31 Cal.2d 184, 186-187 [187 P.2d 741]; Conrad v. Superior Court (1962) 209 Cal. App.2d 143, 151 [25 Cal. Rptr. 670].)
[5] "In order to corroborate the testimony of an accomplice the prosecution must introduce independent evidence which of itself connects the defendant with the crime without any aid from the testimony of the accomplice. The amount and type of evidence necessary to produce such corroboration obviously differs according to the circumstances of each case." (People v. Luker (1965) 63 Cal.2d 464, 469 [47 Cal. Rptr. 209, 407 P.2d 9]; and see pp. 469-472; People v. Bowley, supra, 59 Cal.2d 855, 861-862; People v. MacEwing (1955) 45 Cal.2d 218, 223-224 and 225-226 [288 P.2d 257]; People v. Wynkoop (1958) 165 Cal. App.2d 540, 545-546 [331 P.2d 1040]; and People v. Dillon (1924) 68 Cal. App. 457, 472-473 and 477 [299 P. 974].)
The testimony of other witnesses before the grand jury disclosed the following facts: Chrisman and a female companion appeared on the nights of August 25-26 and 27-28 at the apartment house in San Francisco, which Mrs. Osborne had identified on August 25th as the site of the rendezvous with the seller. A man who answered the description of the seller, accompanied by a woman, as described by the witness, were observed conducting themselves in the manner the witness had related. When Chrisman and his companion were stopped on the 28th, he was observed putting his hand up twice to his mouth in a cup manner as though putting something in his mouth. The witness had testified the heroin was transported in toy balloons, and that Chrisman had instructed her to swallow the balloon if accosted by the authorities. Heroin was present on a spoon found on the seat of Chrisman's car, and there were indications of heroin on a spoon and eyedroppers in a kit which was found under the dashboard, where the *441 witness said it was customarily concealed. There were cigarettes in the trunk of the car where Mrs. Osborne said they were usually carried. Miss Haydon had a list of cigarette brand names, and Chrisman had the business card of the alleged purchaser of the cigarettes. Cigarettes from Safeway and Purity Stores were found in the garage and truck of the alleged purchaser, who admitted they were received from Chrisman. At the time of his arrest, two weeks after allegedly furnishing narcotics to Mrs. Osborne, Chrisman was found to be actively addicted to heroin. Sixteen needle marks were observed on his right wrist and arm, and seventeen on the left. His female companion suffered withdrawal symptoms following her arrest, and stated she had her last injection the morning of her arrest.
In addition to the foregoing evidence, the trial court had before it evidence of the following facts which were elicited at the proceedings before the municipal court. Chrisman was observed at the residence of Mrs. Osborne on August 13, 1965. Later that day she was taken to Agnews State Hospital where she received treatment for narcotic addiction. Chrisman was known to the authorities to have been addicted to narcotics, and to have been connected with narcotic activities for about 15 years. Chrisman at the time of his arrest not only had Berger's business card, but also a registration slip which indicated the car he was operating had previously been registered to Berger.
The similarity of the modus operandi as related by the witness, and as observed could be attributed to coincidence, to the fact that the witness had a reliable source of information, to the fact that the witness had observed the defendant's pattern of action, or to the fact that she had participated, as she had testified. On this state of the record, the evidence set forth can be accepted as circumstantial evidence corroborating the sworn testimony of the witness. Her intimate knowledge of the details of the manner in which the defendant was thereafter observed to conduct his operations links him to her, and the nature of these operations and the material found permits an inference, which will support her testimony, that he furnished the heroin which she used.
There is ample corroboration if the evidence obtained contemporaneously with and subsequent to the arrest of Chrisman is competent. Defendant's objections to this evidence are now examined.

*442 II. Validity of the Search and Seizure

A. The warrant of arrest

The verified complaint filed against Chrisman by the district attorney's investigator on August 25, 1965 charges two violations of section 11501 of the Health and Safety Code. It recites: "I, the undersigned, hereby certify, or, on information and belief declare:

"COUNT ONE
"That in the County of Santa Clara, State of California, on or about the 12th day of August, A.D. 1965, a Felony, to wit: a violation of Calif. Health & Safety Code Sec. 11501 (Furnishing a Narcotic), was committed by the above-named defendant(s), as follows, to wit: The said defendant(s) did unlawfully furnish a narcotic, to wit, Heroin, to another person." A second count charges the offense on August 13th in similar language. Concededly the other person was Mrs. Osborne.
At this time the investigator had the information which Mrs. Osborne later divulged to the grand jury (see points IA and IB, supra), and, in addition, her designation of the apartment where Chrisman allegedly secured the narcotics in San Francisco. None of this information was communicated to the magistrate, who admittedly issued the warrant solely on the basis of the signed complaint. It also appears that the investigating officers previously discussed among themselves whether or not a search warrant would be necessary, and were advised by the district attorney that a search of the defendant and his automobile could be made in connection with the arrest. It was decided that the arrest should be made at a time when the available information indicated that the defendant would probably be in possession of narcotics or narcotics paraphernalia.
[6] Defendant has attacked the validity of this warrant, and the admission into evidence of what he alleges were the fruits of its execution, by his motions to suppress evidence in the municipal and superior courts, by his motion to dismiss the indictment, and by reserving his objections in submitting the matter on the merits. (Cf. People v. Butler (1966) 64 Cal.2d 842, 844-845 [52 Cal. Rptr. 4, 415 P.2d 819].)
In reliance upon Giordenello v. United States (1958) 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245], he contends that the principles which govern the necessity for the establishment of probable cause, and the nature and extent of the evidence *443 necessary to demonstrate probable cause in the case of a search warrant[5] are applicable to a warrant of arrest; and that the issuance of the warrant on the complaint filed in this case violated the provisions of section 813 of the Penal Code as properly construed in the light of the Fourth and Fourteenth Amendments to the United States Constitution.
"Since the time of Ker v. California, 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623], the reasonableness of a search under state law has been measured by the same constitutional standard as that which governs the reasonableness of a search under federal law, and the decisions of the United States Supreme Court interpreting the Fourth Amendment now apply to California procedure by virtue of the Fourteenth Amendment. (Mapp v. Ohio, 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].)" (People v. West (1965) 237 Cal. App.2d 801, 804 [47 Cal. Rptr. 341]; and see People v. Tillman (1965) 238 Cal. App.2d 134, 137 [47 Cal. Rptr. 614]; and People v. Barthel (1965) 231 Cal. App.2d 827, 830 [42 Cal. Rptr. 290].)
In Giordenello, as in this case, the accused contended that the "seizure of the heroin [here the paraphernalia and other corroborating evidence taken from Chrisman and Miss Haydon, and that subsequently obtained from Berger] was unlawful, since the warrant of arrest was illegal and the seizure could be justified only as incident to a legal arrest, and that consequently the admission of the heroin into evidence was error which requires that his conviction be set aside." (357 U.S. at pp. 482-483.) The court stated: "Criminal Rules 3 and 4 provide that an arrest warrant shall be issued only upon a written and sworn complaint (1) setting forth `the essential facts constituting the offense charged,' and (2) showing `that there is probable cause to believe that [such] an offense has been committed and that the defendant has committed it....' The provisions of these Rules must be *444 read in light of the constitutional requirements they implement. The language of the Fourth Amendment, that `... no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing ... the persons or things to be seized,' of course applies to arrest as well as search warrants. See Ex parte Burford (U.S.) 3 Cranch 448 [2 L.Ed. 495]; McGrain v. Daugherty, 273 U.S. 135, 154-157 [71 L.Ed. 580, 47 S.Ct. 319, 50 A.L.R. 1]. The protection afforded by these Rules, when they are viewed against their constitutional background, is that the inferences from the facts which lead to the complaint `... be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14 [92 L.Ed. 436, 68 S.Ct. 367]. The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the `probable cause' required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime.
"When the complaint in this case is judged with these considerations in mind, it is clear that it does not pass muster because it does not provide any basis for the Commissioner's determination under Rule 4 that probable cause existed. The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and it does not set forth any other sufficient basis upon which a finding of probable cause could be made. We think these deficiencies could not be cured by the Commissioner's reliance upon a presumption that the complaint was made on the personal knowledge of the complaining officer. The insubstantiality of such an argument is illustrated by the facts of this very case, for Finley's testimony at the suppression hearing clearly showed that he had no personal knowledge of the matters on which his charge was based. In these circumstances, it is difficult to understand how the Commissioner could be expected to assess independently the probability that petitioner committed the crime charged. Indeed, if this complaint were upheld, the substantive requirements would be completely read out of Rule 4, and the complaint would be of only formal significance, entitled to perfunctory *445 approval by the Commissioner. This would not comport with the protective purposes which a complaint is designed to achieve." (Id., pp. 485-487, fn. omitted; cf. Pen. Code, §§ 806 and 813;[6] and Cal. Const., art. I, § 19.)
The dissenting opinion observed: "The Court does not strike down this complaint directly on the Fourth Amendment, but merely on an extension of Rule 4. It is unfortunate that through this byplay the constitutional limitations surrounding search and seizure are extended to the long-recognized powers of arrest." (Id., p. 491.) Any thought that Giordenello was therefore merely an exercise of the Supreme Court's supervisory power was dissipated in Aguilar v. Texas (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], where six justices recognized that Giordenello was predicated on Fourth Amendment principles which were applicable to the states under the Fourteenth Amendment, in accordance with the principle set forth in Ker v. California (1963) 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623]. (378 U.S. at pp. 112, fn. 3, and 116.)
No California case is found in which the provisions of Penal Code section 813 (fn. 6, supra) are construed in accordance with Giordenello. (Cf. Pen. Code, §§ 1523-1528, and cases cited fn. 5, supra.) Prior to 1951 (Stats. 1951, ch. 1674, § 26, p. 3834) provision was made for examining the complainant or prosecutor and any witnesses who were produced. (See Pen. Code, former §§ 811, 812; and cf. § 1526.) In Ex parte Van Zandt (1921) 52 Cal. App. 38 [197 P. 965], the court stated in reference to the then extant provisions of sections 811, 812 and 813 of the Penal Code: "We find no case in the seventy years of our state's history in which an accused person *446 has been discharged by any court of general appellate jurisdiction for the sole reason that the complaint was not corroborated with depositions, and we are confident that no such case can be found. Where the same point arises in tens of thousands of cases and it meets with the uniform acquiescence of the bench, and bar, a strong inference arises that their acquiescence is justified." (52 Cal. App. at p. 40.) It concluded: "Our conclusion is that an uncorroborated verified complaint, stating sufficient facts, justifies the magistrate in issuing a warrant of arrest. He must be `satisfied' therefrom that a crime has been committed, and furthermore, he must find therefrom reasonable cause to believe that the accused is guilty. These things must be shown fully and by positive statement; but the legislature did not intend to require close technical accuracy in discriminating between probative and ultimate facts. A less satisfactory rule would permit many guilty persons to escape and would render it difficult to apprehend criminals who commit certain classes of crimes." (Id., p. 42; and cf. Ex parte Blake (1909) 155 Cal. 586, 587-591 [102 P. 269]; and Ex parte Dimmig (1887) 74 Cal. 164, 166 [15 P. 619].) In Van Zandt, suggestions that Blake and Dimmig required a contrary conclusion were disposed of by limiting them to requiring depositions only where the complaint was on information and belief.
Since the 1951 amendments to section 806 a complaint may be made upon information and belief (Stats. 1951, ch. 1674, § 25, p. 3834), and the requirement of depositions, for which provision was made in sections 811 and 812, has been abolished (id., § 26). People v. Balthazar (1961) 197 Cal. App.2d 227, 228 [17 Cal. Rptr. 58]; and see Muller v. Justice's Court (1954) 123 Cal. App.2d 696, 699 [267 P.2d 406].) Nevertheless, it has been recognized that language similar to that found in section 813  "if such magistrate is satisfied from the complaint that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it"  confers discretion on the judge of an inferior court as to whether a warrant should be issued. (Taliaferro v. Locke (1960) 182 Cal. App.2d 752, 754-755 [6 Cal. Rptr. 813], construing the provisions of section 1427 of the Penal Code which are applicable to complaints for offenses triable in inferior courts.)
The paucity of authority on the question of the sufficiency of the felony complaint to sustain the issuance of a warrant of arrest may be traced to the fact that the defendant is entitled *447 to a speedy preliminary examination. In the usual case the question of whether there is sufficient cause to believe the defendant guilty of a public offense is resolved by such hearing. The question of the validity of the original complaint and the warrant issued thereon becomes functus officio. (People v. Mason (1960) 183 Cal. App.2d 168, 172 [6 Cal. Rptr. 649]; Wells v. Justice Court (1960) 181 Cal. App.2d 221, 224-225 [5 Cal. Rptr. 204]; People v. Tibbitts (1925) 71 Cal. App. 709, 711-712 [236 P. 217].) It is obvious, however, if a violation of the accused's constitutional rights produced the evidence upon which the charges in the superior court, whether by information or indictment, are predicated, he should have an opportunity to attack the use of that evidence. (See People v. Butler, supra, 64 Cal.2d 842, 846; and People v. Peterson (1965) 233 Cal. App.2d 481, 493-496 [43 Cal. Rptr. 457].)
He has had that opportunity here in the proceedings before the magistrate, in preliminary proceedings in the superior court, and by objections carried into the trial on the merits. The question posed by defendant is whether Giordenello requires an overhaul of the California system of pleading and issuance of warrants of arrest (see Pen. Code, §§ 738, 806, 948-973; People v. Balthazar, supra, 197 Cal. App.2d 227, 228; and Ex parte Van Zandt, supra, 52 Cal. App. 38, 42), or, whether it merely requires that an accused have an opportunity to question the validity of his arrest and the use of evidence obtained thereby. It is unnecessary to resolve that question in these proceedings because, unlike Giordenello (see 357 U.S. at pp. 487-488) this case presents a record where the prosecution throughout has contended that defendant's arrest was predicated on reasonable cause, regardless of the validity of the warrant.
Defendant insists that to sanction the issuance of warrants of arrest on allegations which do not satisfy the requirements for issuance of a search warrant, is to invite misuse of such warrants of arrest to by-pass the requirements of a search warrant. The answer to this contention, at least until other remedies fail (cf. People v. Cahan (1955) 44 Cal.2d 434, 445 [282 P.2d 905, 5 A.L.R.2d 513]), is to strike down those arrests where there has been a misuse of process, or issuance and use of process for one offense as a subterfuge to secure evidence of another. (See People v. Ghimenti (1965) 232 Cal. App.2d 76, 81 [42 Cal. Rptr. 504].) A blanket requirement for a new form of pleading in the complaint contemplated by *448 sections 738 and 806 of the Penal Code would appear to be inconsistent with the statutory scheme, and would unnecessarily hamper the administration of justice. (See Ex parte Van Zandt, supra, 52 Cal. App. at p. 42; and Ex parte Blake, supra, 155 Cal. at p. 590.) Such a requirement assumes that the complainant has perjured himself in swearing to the ultimate facts. The penalties for perjury and for malicious prosecution should be considered as of some effect in curbing unwarranted use of a warrant of arrest. The accused in a felony matter is protected from prosecution without reasonable cause by the preliminary examination, and the addition of new requirements would in effect require two such examinations, one ex parte, and another following his arrest.
Turning to the instant case, it appears from the evidence introduced before the grand jury and the magistrate that there was no abuse of process. The victim could have sworn to each and every element necessary to establish the offense of which the defendant was accused in the complaint. Her testimony before the grand jury, whether corroborated or not, was sufficient to hold the defendant to answer the charges in the original complaint, as they were subsequently incorporated in the indictment. (People v. McRae, supra, 31 Cal.2d 184, 186-187; Conrad v. Superior Court (1962) 209 Cal. App.2d 143, 144 [25 Cal. Rptr. 670].) This is not the case of a confidential informer, either reliable or unreliable, or of a completely unreliable "stool pigeon." (See People v. Lewis (1966) 240 Cal. App.2d 546, 549-550 [49 Cal. Rptr. 579].) On the record the trial court was justified in finding that the real complainant was the victim of the drug habit who conscientiously desired to curb her own addiction, and to cooperate in removing from circulation one who was contributing to the spread of the evil.
Under these circumstances no error is found in the rulings of the magistrate, or the superior court, insofar as they failed to find that the warrant of arrest was illegally issued.

B. Probable Cause for Arrest

[7a] Defendant appears to suggest a "sporting" approach to the question of what facts may be considered in connection with determining whether there was reasonable cause for his arrest. Criticism is directed at the officers' failure to serve the allegedly invalid warrant of arrest at the earliest opportunity. This failure does not, of course, bar consideration of information which developed thereafter and prior to the actual arrest. It is as beneficial to the falsely accused, as it *449 is detrimental to the lawbreaker, to have as complete an investigation as possible before determining whether to deprive the suspect of his freedom.
The facts communicated to the officers by Mrs. Osborne, and those events observed by the officers, both before and after the arrest, have been set forth above. (See part I, topics A, B, and C, supra.) Before the arrest, in addition to the information received from Mrs. Osborne, the officers observed Chrisman in Mrs. Osborne's home; they had observed "track marks" on her; they knew of defendant's prior record including his convictions for narcotics offenses; they, on two occasions, observed defendant, in the company of a young woman, visiting the San Francisco apartment house that had been previously identified by the witness; and they observed a course of conduct on these two occasions that complied in detail with the conduct described by the witness. This conduct included the means of gaining entry to the house, the departure of a Negro couple in the defendant's car, and on the occasion of the arrest, the subsequent departure of the defendant.
[8] The arrest and search cannot be justified by what it turned up. (People v. Brown (1955) 45 Cal.2d 640, 643 [290 P.2d 528].) The applicable rules were recently set forth in People v. Talley (1967) 65 Cal.2d 830 [56 Cal. Rptr. 492, 423 P.2d 564], as follows: "A peace officer may arrest a person without a warrant `[w]henever he has reasonable cause to believe that the person to be arrested has committed a felony, ...' (Pen. Code, § 836.) Reasonable or probable cause exists when the facts and circumstances within the knowledge of the officers at the moment of the arrest are sufficient to warrant a prudent man in believing that the defendant has committed an offense. (Beck v. Ohio, 379 U.S. 89, 96 [13 L.Ed.2d 142, 85 S.Ct. 223]; People v. Schader, 62 Cal.2d 716, 722 [44 Cal. Rptr. 193, 401 P.2d 665].) The question of probable cause to justify an arrest without a warrant must be tested by the facts which the record shows were known to the officers at the time the arrest was made. (People v. Privett, 55 Cal.2d 698, 701 [12 Cal. Rptr. 874, 361 P.2d 602]; People v. Paul, 147 Cal. App.2d 609, 618 [305 P.2d 996].)
[9] "Information obtained from others may be relied upon to show probable cause. (Ker v. California, 374 U.S. 23, 35-36 [10 L.Ed.2d 726, 83 S.Ct. 1623]; Draper v. United States, 358 U.S. 307, 311-312 [3 L.Ed.2d 327, 79 S.Ct. 329]; People v. Smith, 50 Cal.2d 149, 151 [323 P.2d 435]; People v. *450 Boyles, 45 Cal.2d 652, 655-656 [290 P.2d 535].) Although information provided by a known informer of unproved reliability or by an anonymous informer is relevant on the issue of probable cause, an arrest ordinarily may not be based solely on such information, and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. (People v. Gallegos, 62 Cal.2d 176, 179 [41 Cal. Rptr. 590, 397 P.2d 174]; People v. Reeves, 61 Cal.2d 268, 273-274 [38 Cal. Rptr. 1, 391 P.2d 393]; Willson v. Superior Court, 46 Cal.2d 291, 294 [294 P.2d 36].)" (65 Cal.2d at pp. 835-836. To the same effect see People v. Gallegos (1964) 62 Cal.2d 176, 179 [41 Cal. Rptr. 590, 397 P.2d 174]; People v. Reeves (1964) 61 Cal.2d 268, 273-274 [38 Cal. Rptr. 1, 391 P.2d 393]; Willson v. Superior Court (1956) 46 Cal.2d 291, 294-295 [294 P.2d 36]; People v. Wright (1966) 245 Cal. App.2d 265, 268 [53 Cal. Rptr. 844]; People v. Stewart (1966) 241 Cal. App.2d 509, 513 [50 Cal. Rptr. 630]; Saunders v. Municipal Court (1966) 240 Cal. App.2d 563, 566 [49 Cal. Rptr. 763]; People v. Cedeno (1963) 218 Cal. App.2d 213, 219-220 [32 Cal. Rptr. 246]; Ovalle v. Superior Court (1962) 202 Cal. App.2d 760, 763 [21 Cal. Rptr. 385]; People v. Amos (1960) 181 Cal. App.2d 506, 508-509 [5 Cal. Rptr. 451]; People v. Walker (1958) 165 Cal. App.2d 462, 465-466 [331 P.2d 668].)
Defendant insists that there was insufficient evidence to corroborate the information received from Mrs. Osborne, whose reliability concededly had never been tested before. (See People v. Gallegos, supra, 62 Cal.2d 176, 179-180; People v. Reeves, supra, 61 Cal.2d 268, 274-275; People v. Stewart, supra, 241 Cal. App.2d 509, 513-514; Saunders v. Municipal Court, supra, 240 Cal. App.2d 563, 566-569; People v. Cedeno, supra, 218 Cal. App.2d 213, 221-230; Ovalle v. Superior Court, supra, 202 Cal. App.2d 760, 763; and People v. Amos, supra, 181 Cal. App.2d 506, 508-509.) Mere identification of the suspect, or the establishment of the identity of his automobile or the place of his residence, is not sufficient corroboration (People v. Gallegos, supra, 62 Cal.2d 176, 179; People v. Cedeno, supra, 218 Cal. App.2d 213, 222-223; People v. Amos, supra, 181 Cal. App.2d 506, 508), nor is the fact that the suspect has a prior narcotics record (People v. Gallegos, supra, 62 Cal.2d 176, 179; People v. Reeves, supra, 61 Cal.2d 268, 274).
Although it has been suggested that for corroboration there must be some conduct of the suspect that tends to indicate he is violating the law (People v. Cedeno, supra, 218 Cal. App.2d *451 213, 223), it is recognized "that the reliability of the informant may be shown not only by past experience with the informant, but also may be substantiated by the proven accuracy of the information given by the informant and which the officers from other sources know is accurate. This substantiation may be supplied by substantial corroborative facts known or discovered. [Citations.]" (Id., p. 220.) The corroborative facts known or discovered may be innocent acts in themselves, but have significance in the light of other knowledge possessed by the officers. (See Willson v. Superior Court, supra, 46 Cal.2d 291, 295.) Defendant would avoid the corroboration found in the establishment of the veracity of the user's account of the modus operandi to secure the narcotics by reference to the following principle: "The quantification of the information does not necessarily improve its quality; the information does not rise above its doubtful source because there is more of it." (Ovalle v. Superior Court, supra, 202 Cal. App.2d 760, 763; and see Saunders v. Municipal Court, supra, 240 Cal. App.2d 563, 567; and People v. Cedeno, supra, 218 Cal. App.2d 213, 222.) The quantification of the information does, however, create more facts, which upon investigation may be refuted or corroborated. "The fact that no single thread of evidence is adequate in no way negatives their joinder into a cord which fully bears the weight required by law. Here the facts known to the agents fitted into a pattern so persuasive of probable guilt that the agents could be deemed remiss if they failed to arrest [the suspect]." (People v. Walker, supra, 165 Cal. App.2d 462, 466; and see People v. Gamboa (1965) 235 Cal. App.2d 444, 448 [45 Cal. Rptr. 393].)
[7b] The People, in justification of the arrest, further rely upon the fact that the defendant was observed putting something in his mouth. (People v. Tabb (1962) 208 Cal. App.2d 567, 570-571 [25 Cal. Rptr. 541] [cert. granted (1963) 375 U.S. 27 [11 L.Ed.2d 44, 84 S.Ct. 90], reversed and remanded for consideration in light of Douglas v. California (1963) 372 U.S. 711 [10 L.Ed.2d 126, 83 S.Ct. 1020]]; and People v. Pendarvis (1960) 178 Cal. App.2d 239, 241 [2 Cal. Rptr. 824]; and see People v. Garavito, supra, 65 Cal.2d 761, 764 [56 Cal. Rptr. 289, 423 P.2d 217]; People v. Tillman (1965) 238 Cal. App.2d 134, 140 [47 Cal. Rptr. 614]; People v. Cedeno, supra, 218 Cal. App.2d 213, 224-225; and People v. Vegazo (1961) 191 Cal. App.2d 666, 669-672 [13 Cal. Rptr. 22].) If these two furtive gestures were made as a result of an illegal arrest, they could not be used to support it. (Badillo v. Superior Court *452 (1956) 46 Cal.2d 269, 273 [294 P.2d 23]; People v. Stewart, supra, 241 Cal. App.2d 509, 515-517; People v. Cedeno, supra, 218 Cal. App.2d 213, 226-230; People v. Allen (1963) 214 Cal. App.2d 136, 138 [29 Cal. Rptr. 455]; Gascon v. Superior Court (1959) 169 Cal. App.2d 356, 358-359 [337 P.2d 201]; and see People v. Reeves, supra, 61 Cal.2d 268, 274.) There is, however, ample evidence to at least support the right and duty of the officers to stop the car for further investigation. Under these circumstances the furtive gesture of the suspect can be considered on the issue of probable cause for his arrest. (People v. Garavito, supra, 65 Cal.2d 761, 764; People v. Tillman, supra, 238 Cal. App.2d 134, 140.)
It is concluded that the facts of this case justify defendant's arrest and search regardless of the validity of the warrant. (Cf. People v. Tillman, supra, 238 Cal. App.2d 134, 139.) The same facts warranted the arrest and search of his companion. (Cf. Rideout v. Superior Court (1967) 67 Cal.2d 471, 475 [62 Cal. Rptr. 581, 432 P.2d 197].) It is acknowledged that the physical evidence discovered on the arrest, if properly obtained, justified the subsequent proceedings against Berger. The objections to those proceedings and the evidence thereby obtained collapse with the failure of the attack on the original arrest. The evidence supporting the conspiracy charges was legally obtained.

III. Multiple Punishment

[10] Defendant contends that one of the conspiracy convictions must be set aside to avoid the possibility of double punishment. (See Pen. Code, § 654; People v. Quinn, supra, 61 Cal.2d 551, 556; People v. McFarland (1962) 58 Cal.2d 748, 760-763 [26 Cal. Rptr. 473, 376 P.2d 449]; Neal v. State of California (1960) 55 Cal.2d 11, 18-21 [9 Cal. Rptr. 607, 357 P.2d 839]; People v. Schnittspan (1967) 250 Cal. App.2d 951, 952-953 [59 Cal. Rptr. 93]; People v. Winchell (1967) 248 Cal. App.2d 580, 586-587 [56 Cal. Rptr. 782]; People v. Keller (1963) 212 Cal. App.2d 210, 220-221 [27 Cal. Rptr. 805].)
His reliance on Quinn is misplaced. In that case the defendant was convicted of the possession of narcotics which were the fruit of a robbery of which he was also convicted and sentenced. The court concluded he could only be sentenced for robbery, the more serious of the two offenses. (61 Cal.2d at p. 556.) The court noted, however, that the theft of a car which was used in the robbery was a separate offense.
So here the conspiracy to commit burglary and grand theft, *453 like the theft of the car, was executed to secure a means to obtain the objective of the second conspiracy, the possession of narcotics. It was, however, a separate and divisible transaction. The fruits of the former conspiracy could be used for any purpose the conspirators wished, and the narcotics, the subject of the latter conspiracy, could have been acquired with other resources if they were available. The situation is analogous to that described in the following passage in Schnittspan: "One who escapes has an obvious and continuing motivation to remain free of custody. He enjoys but a harassed freedom, to which every glance of recognition is a threat and the seeking of legitimate employment to earn food, clothing and transportation would be a hazard. To extend section 654 as respondents ask would extend a license to an escaped felon, for the full period he was able to keep good his escape. He could suffer but one punishment for all crimes committed while he remained free of custody, whatever the period. If convicted of his escape promptly upon his return to custody, he would be free of prosecution for other crimes, however remote and whatever their gravity, later discovered and charged." (250 Cal. App.2d at p. 953.) In this case the acceptance of defendant's theory would license a narcotic addict to resort to all and any forms of criminality to secure funds to satisfy his habit, without fear of more than one punishment.
No multiple punishment is involved in the judgment and sentences.

IV. Order Granting New Trial on Conviction of Transportation

[11] The People attack the court's grant of a new trial after finding the defendant guilty of transportation of narcotics on August 28, 1965, in violation of section 11501 of the Health and Safety Code.
Defendant suggests that the court's ruling was in effect an acquittal because it was a ruling that the evidence, to which the parties had stipulated, was insufficient to sustain a conviction. The record, however, reflects that defendant's offer to resubmit that count forthwith on the same evidence was refused by the prosecutor; and that the parties agreed that cross-appeals would be taken without resubmitting the charge contained in count VI.
The court's remarks indicated that its order was predicated upon the decision in People v. Leal (1966) 64 Cal.2d 504 [50 *454 Cal. Rptr. 777, 413 P.2d 665], where the court concluded, "the possession of a minute crystalline residue of narcotic useless for either sale or consumption, ... does not constitute sufficient evidence in itself to sustain a conviction." (64 Cal.2d at p. 512.)
The People charge that the trial court erroneously overlooked the Leal decision's observation: "We do not say, however, that the discovery of traces of narcotics in a defendant's possession is without legal significance. Clearly, the presence of those traces may serve as evidence in the proof of many types of narcotics offenses." (Id., fn. omitted; and see People v. Garcia (1967) 248 Cal. App.2d 284, 288-291 [56 Cal. Rptr. 217]; and People v. Salas (1936) 17 Cal. App.2d 75, 76-78 [61 P.2d 771]; but cf. People v. McChristian, supra, 245 Cal. App.2d 891, 894-897; and People v. Villalobos (1966) 245 Cal. App.2d 561, 566-568 [54 Cal. Rptr. 60].) They contend that the evidence of the heroin traces on the paraphernalia was circumstantial evidence, which with Mrs. Osborne's testimony as to the modus operandi, and the observed furtive movements of defendant, would support a finding that he was transporting balloons of heroin, which he swallowed. It is unnecessary to determine whether such a finding would be warranted. It is clear that the evidence does not require such a finding as a matter of law. Under these circumstances there was no error in granting a new trial on count VI.[7]
The judgment convicting the defendant on counts I, II, III and V, and the order granting defendant a new trial on count VI, are each affirmed.
Molinari, P.J., and Elkington, J., concurred.
A petition for rehearing was denied on December 19, 1967. and the following opinion was then rendered.
THE COURT.
In our opinion on page 445 we stated that no California case was found in which the provisions of Penal Code, section 813 are construed in accordance with Giordenello v. United States (1958) 357 U.S. 480 [2 L.Ed.2d 1503, 78 S.Ct. 1245]. Since the opinion was filed the *455 Attorney General has directed attention to People v. Sesslin, 2d Crim. 13155, Div. 1 (June 28, 1967) (Cal. App.) 60 Cal. Rptr. 30, hearing in Supreme Court, Crim. 11519, granted September 21, 1967 [67 A.C. No. 7 Minutes p. 7]; and People v. Chimel, 4th Crim. 2722, Div. 2 (August 30, 1967) (Cal. App.) 61 Cal. Rptr. 714, hearing in Supreme Court, Crim. 11607, granted October 25, 1967 [67 A.C. No. 12, Minutes, p. 5]. These cases have been set for hearing on the Los Angeles Calendar, January 4, 1968.[*]
Appellant's petition for a hearing by the Supreme Court was denied January 24, 1968. Sullivan, J., did not participate therein.
NOTES
[1] Reportedly, defendant Haydon entered a plea of guilty to the count charging conspiracy to possess heroin, and the remaining counts were dismissed. The charges against Berger were severed for separate trial. The municipal court proceedings had been dismissed after the indictment was returned.
[2] People v. Medina (1961) 198 Cal. App.2d 224, 231 [17 Cal. Rptr. 722]; People v. Patterson (1959) 169 Cal. App.2d 179, 186 [337 P.2d 163]; People v. Flynn (1958) 166 Cal. App.2d 501, 510-511 [333 P.2d 37]; People v. Drake (1957) 151 Cal. App.2d 28, 44 [310 P.2d 997]; People v. Rios (1954) 127 Cal. App.2d 620, 621 [274 P.2d 163].
[3] In People v. O'Neil (1965) 62 Cal.2d 748 [44 Cal. Rptr. 320, 401 P.2d 928], the court took judicial notice of the addictive process. (62 Cal.2d at pp. 752-753, particularly fns. 4-8 and accompanying text. See also People v. Victor (1965) 62 Cal.2d 280, 301-304 [42 Cal. Rptr. 199, 398 P.2d 391].) Significantly, the court recognized, "It is also at this stage that the individual, realizing he is physically dependent upon the drug, becomes cognizant of the fact that he is `addicted.'" (62 Cal.2d at p. 753, fn. omitted.) The witness should be able to testify to that of which she can become cognizant.
[4] Pierce, J. (now P.J.) in Conrad v. Superior Court (1962) 209 Cal. App.2d 143, 151 [25 Cal. Rptr. 670].
[5] See Aguilar v. Texas (1964) 378 U.S. 108, 114-115 [12 L.Ed.2d 723, 84 S.Ct. 1509]; United States v. Ventresca (1965) 380 U.S. 102, 105-109 [13 L.Ed.2d 684, 85 S.Ct. 741]; People v. Keener (1961) 55 Cal.2d 714, 719 and 721-722 [12 Cal. Rptr. 859, 361 P.2d 587] [qualified on another point by People v. Butler (1966) 64 Cal.2d 842, 844-845 [52 Cal. Rptr. 4, 415 P.2d 819]; Saunders v. Municipal Court (1966) 240 Cal. App.2d 563, 565-566 [49 Cal. Rptr. 763]; People v. Tillman (1965) 238 Cal. App.2d 134, 137-138 [47 Cal. Rptr. 614]; People v. West (1965) 237 Cal. App.2d 801, 804-805 [47 Cal. Rptr. 341]; Galena v. Municipal Court (1965) 237 Cal. App.2d 581, 586-588 [47 Cal. Rptr. 88]; People v. Govea (1965) 235 Cal. App.2d 285, 295-297 [45 Cal. Rptr. 253]; and People v. Barthel (1965) 231 Cal. App.2d 827, 830-831 [42 Cal. Rptr. 290].
[6] These sections read in part:

Section 806: "A proceeding for the examination before a magistrate of a person on a charge of an offense originally triable in a superior court must be commenced by written complaint under oath subscribed by the complainant and filed with the magistrate; ... Such complaint may be verified on information and belief. When the complaint is used as a pleading to which the defendant pleads guilty under Section 859a of this code, the complaint shall contain the same allegations, including the charge of prior conviction or convictions of crime, as are required for indictments and informations and, wherever applicable, shall be construed and shall have substantially the same effect as provided in this code for indictments and informations."
Section 813: "When a complaint is filed with a magistrate charging a public offense originally triable in the superior court of the county in which he sits, if such magistrate is satisfied from the complaint that the offense complained of has been committed and that there is reasonable ground to believe that the defendant has committed it, he must issue a warrant for the arrest of the defendant; ..."
[7] In both People v. Bailey (1961) 55 Cal.2d 514 [11 Cal. Rptr. 543, 360 P.2d 39], and People v. Fontaine (1965) 237 Cal. App.2d 320 [46 Cal. Rptr. 855], on which the People rely, new trials had been ordered on questions of law which the appellate court found were erroneously decided, and there was no dispute as to the facts, or in relation to the inferences which could be drawn from them.
[*] Opinions of the Supreme Court were filed on April 10, 1968. See People v. Sesslin, 68 Cal.2d ___ [67 Cal. Rptr. 409, 439 P.2d 321] and People v. Chimel, 68 Cal.2d ___ [67 Cal. Rptr. 421, 439 P.2d 333].